248 So.2d 774 (1971)
Mrs. Viola Maynard CRAWLEY
v.
ILLINOIS CENTRAL RAILROAD COMPANY et al.
No. 46236.
Supreme Court of Mississippi.
May 31, 1971.
Rehearing Denied June 28, 1971.
Charles C. Finch, Batesville, John W. Whitten, Jr., Sumner, for appellant.
Albert Donald Whitten, Charleston, J.W. Kellum, Sumner, for appellees.
HARPER, Justice:
This is a suit by the appellant against the defendant Railroad Company for the alleged negligent upkeep of a railroad crossing by permitting the crossing to become dangerous to the travelling public because of the growth of weeds and bushes and by permitting the warning signs to deteriorate so as to become illegible. It was further alleged that the speed of the train of the Railroad Company was excessive considering the condition of the crossing and that the Railroad Company was negligent in not installing warning lights and bells at the crossing.
The trial of this case was had about four years after the accident in question and consumed five days in the trial thereof. During the proceeding, the court recessed through the weekend from Saturday until Monday morning. The jury was properly instructed not to discuss the case, particularly with their wives, and the jurors were released to go to their separate homes.
On the following Sunday two jurors travelled a distance of fifty miles to a place they considered to be the railroad crossing in issue on the trial of the case in which they were then serving as jurors. Both of these jurors were accompanied by *775 their wives. These women were duly summoned and one of them testified that her husband approached the crossing, stopped and looked and said that the purpose he had in mind was to approach that railroad crossing, and see how much view there was. The other lady said that she rode with her husband on Sunday afternoon and said: "We passed what we thought was the crossing." She said the only reason they had for going off their route was: "To cross it, that's right."
The jury returned a verdict in favor of the Railroad Company, whereupon the attorneys for the plaintiff filed a motion setting up the fact that two jurors, independently of each other, had made unauthorized visits to the crossing in order to determine for themselves the amount of visibility at the crossing. Appellant attached the affidavit of the two jurors in which the two jurors stated that they went to the site to examine the crossing and that one juror told the jury what he saw. Three additional affidavits of members of the jury were attached to the motion for a new trial. One of these affidavits stated that two of the jurors changed their votes after having heard the report of one of the jurors who visited the scene of the accident.
The trial judge overruled the motion for a new trial and based his decision upon our holding in Ratliff v. Nail, 231 So.2d 798 (Miss. 1970). In that case a juror was offered as a witness to testify that he went to the scene of an accident and made observations and calculations and relayed his finding to other jurors. We said: "We find no merit in this assignment of error since there was no competent evidence before the court to support the motion."
The ruling in Ratliff is sound law. We said in that case: "It has long been the law of this state that jurors cannot testify to impeach a verdict rendered by them. See Index Drilling Co., Inc. v. Williams, 242 Miss. 775, 137 So.2d 525, 8 A.L.R.3d 323 (1962) and the authorities therein cited." See also Ulmer v. Pistole, 115 Miss. 485, 76 So. 522 (1917).
In Sprinkle v. State, 137 Miss. 731, 102 So. 844 (1925), this Court permitted two jurors to testify as to the misconduct of another juror. The state objected upon the ground that the jurors should not be permitted to testify to impeach their own verdict. This Court said in response to this argument as follows:
Therefore jurors will not be permitted on a motion for a new trial to give evidence as to what influenced their verdict. But testimony by jurors as to the misconduct of others in their presence or hearing  testimony as to outside influences brought to bear upon them  does not fall within that principle. They will not be heard to give evidence as to their own misconduct, but they will be heard to give evidence as to misconduct of others which is calculated to have a bearing on their verdict. (137 Miss. at 744, 102 So. at 846).
The testimony of the jurors was not offered here, but their affidavits were. In the Index Drilling Company case, supra, we said that the jurors' affidavits introduced for the purpose of impeaching a verdict should be disregarded citing 89 C.J.S. Trial § 523 (1955).
The trial court was correct in not giving sanction to the affidavits of the jurors, but testimony of other witnesses, not jurors, has long been admitted to show the misconduct of jurors, although many courts hold a contrary view. See 11 A.L.R.3rd 979 (1967). See Sprinkle v. State, 137 Miss. 731, 102 So. 844 (1925); Buckeye Cotton Oil Co. v. Owen, 122 Miss. 14, 84 So. 133 (1920); Carter v. State, 78 Miss. 348, 29 So. 148 (1901); Cartwright v. State, 71 Miss. 82, 14 So. 526 (1893); Woods v. State, 43 Miss. 364 (1870); Organ v. State, 26 Miss. 78 (1853); and Parham v. Harney, 14 Miss. 55 (6 Smedes & M.) (1846).
*776 This Court has uniformly held in this state in criminal cases that the presumption of "rightfully and regularly done" (omnia rite acta esse praesumuntur) in appealing cases does not apply to the misconduct of jurors. Irregular activity of the jury is looked upon with suspicion of improper influence and unless reasoned or explained, the jury verdict cannot stand. Carter v. State, 78 Miss. 348, 29 So. 148 (1901). It is said that the rule is somewhat modified as to civil cases. Carter v. State, supra.
This brings us to the issue as to whether or not the undisputed investigation by the two jurors was such misconduct as to require a new trial.
It has been stated as a general rule that a private investigation of the case by members of the jury to discover evidence, or an unauthorized inspection of the scene involved, constitutes misconduct and where there is reasonable probability that the verdict of the jury was influenced by the unauthorized view, the court should require a new trial.
The author of 89 C.J.S. Trial § 459 (1955) has this to say on this subject:
While the court may, in its discretion, allow the jury to view or inspect a scene or object involved in the case, as discussed supra § 47, an unauthorized view or inspection of the locus in quo by the jurors constitutes misconduct, and according to many cases an unauthorized view or inspection by the jury will vitiate the verdict where it clearly appears, or it is reasonably to be inferred, or there is a reasonable probability that, the verdict was influenced by the unauthorized view or inspection. Especially is the verdict vitiated where the view or examination is made, by preconcerted arrangement, in company with the friends and witnesses of the successful party without the knowledge or presence of the defeated party or his counsel.
Although it has been stated broadly that misconduct in taking an unauthorized view or inspection will, because it has a tendency to corrupt and cast suspicion on the pure and sound administration of justice, cause the verdict to be set aside without regard to whether the misconduct has resulted in prejudice, it has been held that the verdict will not be set aside because of an unauthorized view or inspection where it can be preserved, or it is reasonably clear that the verdict was not improperly influenced; and some decisions contain statements which go even further and require an affirmative showing of prejudice before the verdict will be vitiated. It has also been held that an unauthorized view by jurors constitutes misconduct, only as to that element of the verdict affected thereby. The refusal to declare a mistrial is not error where there is no proof that the juror made an unauthorized inspection.
4 Wigmore, Evidence section 1166 (3d ed. 1940) has this to say on this subject:
Such unauthorized investigations by way of view have invariably been regarded as improper; the only question has been whether the irregularity was dangerous enough to require a new trial.
The reason given for reversal of unauthorized visits by a juror to premises in question in civil cases is said to be that the jurors are exposed to information other than that lawfully admitted during the trial. Other courts base their holdings upon the loss of the right to cross examine the witness. 11 A.L.R.3d 933(6) (1967).
Some of the state courts hold that an unauthorized visit to the scene involved is not prejudicial in the absence of proof that the visit influenced the verdict of the jury. Other courts hold that such a visit is presumed to be prejudicial. 11 A.L.R.3d 923 (2a) (1967).
All of the authorities, however, whether or not they require proof of undue influence on the jury, seem to differentiate between a casual visit to the scene involved *777 and a visit made for the purpose of obtaining additional evidence for their own satisfaction and which may be conveyed to other members of the jury as new evidence from them. See the many cases cited in 11 A.L.R.3d 949(14) (1967).
There is no way to make such proof under the procedural rules of this state, unless this Court will extend the rule in Sprinkle v. State, 137 Miss. 731, 102 So. 844 (1925) to permit the testimony of jurors to show the influence upon the other jurors caused by an unlawful view by its members. We are of the firm opinion that the verdict of a jury should not be subject to impeachment by testimony of the jurors; nevertheless, where jurors disobey the orders of the court to the extent of visiting the scene involved in a case, when the scene is a material factor in issue, as in this case, for the purpose of obtaining additional evidence, such conduct of jurors must be considered to be improper. This was incompetent evidence thrown into the deliberations of the jury obtained by two jurors, probably innocently, though not lawfully.
If the testimony divulges that the inspection was casual, or of such a nature as not to be calculated to influence the verdict of the jury, a new trial should not be granted. However, in the instant case the railroad crossing was the predominant issue. Where the inspection is of such a nature as to relate to a vital issue in dispute and calculated to influence members of the jury  and which probably did influence the jury verdict  a new trial should be granted.
The judgment of the trial court is reversed and the case is remanded for a new trial.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, BRADY and PATTERSON, JJ., concur.
GILLESPIE, P.J., and INZER, ROBERTSON and SMITH, JJ., dissent.