PORTER *v.* STATE.

(Division A. Jan. 31, 1938.)

[178 So. 475. No. 32961.]

John Horan, of Water Valley, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**McGowen, J.,** delivered the opinion of the court.

The appellant, Charlie Porter, was indicted for robbery, with firearms, under chapter 328, Laws of 1932. He was tried and convicted; and the jury disagreeing as to his punishment, the court sentenced him to serve a term of thirty years in the penitentiary; from which judgment this appeal was taken.

W. E. Blackmur, president of a bank in Water Valley, with two companions, young men who stayed in his home, had been to a picture show on the night of June 24, 1936; they had returned to his home in his car shortly after 9:30, placed the car in the garage, and started to the house, about fifty feet away, when three men stepped from their hiding place, one of whom struck Blackmur over the head, rendering him temporarily unconscious. Pistols in hand, the three men commanded that the garage be opened, then placed Blackmur and his two companions in the former's car, themselves got in, drove the car around town and out some distance into the country, where Blackmur and his companions were ordered to "get out;" Blackmur being assisted because of his condition. His watch, and pocketbook containing ten or fifteen dollars, and some other personal property were taken from him by the robbers, who afterwards left their three victims bound with barbed wire, and drove away in Blackmur's automobile, valued at some five or six hundred dollars, which was found abandoned in Arkansas next day, just across the river from Memphis, Tenn.

The accused, Charlie Porter, was positively and unequivocally identified as one of the three men engaged in the commission of the crime.

Among other things, the robbers tried to extract from Blackmur information about the bank—wanted to take him there and have him open the safe; but Blackmur

informed them that there was a time lock on the safe, and it could not then be opened. Porter, with a pistol in his hand, said among other things, "God damn this fellow, he ought to have his belly blown out," and other such remarks. The money and watch were never recovered.

The defense was an alibi, to the effect that the appellant, in company with his wife, had gone to a lake at Penton, Miss., about twenty-three miles from Memphis; and that on the evening and night of June 24th he was with this fishing party. One of the witnesses offered for the appellant, however, testified that this fishing party was on Tuesday night; while the other witnesses were positive in fixing the date as Wednesday night, the 24th of June—the date of the robbery.

Mrs. Porter, appellant's wife, on cross-examination by counsel for the State, was asked the following questions: "Isn't it a fact that at noon, the noon hour, on March the thirty-first, nineteen hundred and thirty-seven, at the Item Biscuit Company, in Memphis, where you worked, that you told Sergeant Clark that Charlie Porter, this defendant here and your husband, in and around the twenty-fourth day of June, nineteen hundred and thirty-six, was in and out of the state of Mississippi, staying in Mississippi and coming back to take you to soft ball games now and then?" To this she replied that she made no such statement.

The State offered in rebuttal A. O. Clark, who was questioned as to the place and date of seeing the appellant as follows.

"Tell the jury what conversation you had with her at that time with reference to Charlie Porter's whereabouts, if any, at the time of the Blackmur robbery here at Water Valley? A. I talked to her in regard to the whereabouts of Charlie Porter in the months of May and June—

"Objection: No predicate laid for that.

"Objection sustained.

"Court: What conversation, if any, did you have with

her on the thirty-first day of March, nineteen hundred and thirty-seven, the District Attorney asked you. A. In regard to the whereabouts of Charlie Porter in May and June nineteen hundred and thirty-six.

"Objection to the whereabouts of defendant in May and June.

"Objection overruled.

"Court: Confine it to June."

The witness continued: "She stated that Charlie Porter was fishing with a man by the name of Goff down around Ruleville, Mississippi. I asked her this question 'If he was staying at hime,' and she said 'No. He was going in and out of Memphis and occasionally took her to soft ball games when he was there.' They were held at night."

The only error here assigned is that it was error for the court to permit the impeachment or contradiction of the wife's testimony on an immaterial matter; she being the only witness whose testimony completely and thoroughly established the appellant's alibi.

The issue before the court was as to the whereabouts of Charlie Porter on the night of June 24, 1936. There was no question as to the robbery—the only question was in regard to the identity of the robber. The inquiry as to whether or not Porter was with his wife in Memphis, and went with her on a fishing trip, or was elsewhere in Mississippi on that date, was, then, material; and under these circumstances the contradiction was material.

It will be observed that the only objection interposed was as to the whereabouts of the defendant in May and June; and the court having confined queries to his whereabouts in June, there was no further objection. There was no objection on the ground that the attempted contradiction was in regard to immaterial testimony. This court has repeatedly held that an objection may not be raised in this court for the first time. The argument here presented was not presented in the lower court. The objection there was completely met by the court, and no

further objection was interposed. See Peters v. State, 158 Miss. 530, 130 So. 695; Conwill v. State, 147 Miss. 118, 112 So. 868; Marley v. State, 109 Miss. 717, 69 So. 210.

We find no reversible error in this case.

Affirmed.