BROOM, Justice,
for the Court:
Murder is the offense for which appellant Fred Polk (defendant) was convicted at trial in the Circuit Court of Rankin County, the Honorable Alfred G. Nicols, Jr., circuit judge, presiding. The indictment charged that Polk murdered Constable Jerry L. McCrory at a time when the constable was engaged in the duties of his office. Mississippi Code Annotated § 97-3-19(2)(a) (Supp.1981). Verdict of the jury was that the defendant was guilty of murder (less than capital), whereupon he was sentenced to life imprisonment. Reversal is urged on the following arguments: (1) the jurors dispersed during the trial; (2) instruction D-7 was erroneously rejected; (3) “improper conduct by the district attorney”; and (4) the jury should have been restricted to finding the defendant “guilty of manslaughter or not guilty”. We affirm.
Justice Court Judge Cecil McCrory testified that he issued a warrant for the defendant’s arrest and handed it to Constable Jerry McCrory (the deceased) for him to go “pick Fred Polk up”. The judge then went and parked near Forshee’s Grocery Store, which was not far from defendant Polk’s place of residence. According to Judge McCrory, he saw the constable (who had the arrest warrant) walk toward Polk’s house — a shot was fired, after which the judge saw the uniformed constable fall. Other shots were then fired. Nowhere in the defendant’s testimony (wherein he admitted shooting the constable) did he say that the constable was shooting at him or had a gun or weapon in his hand.
The first argument made here is that the lower court erred in allowing the jury to go vote in municipal elections during the trial. In his brief, the defendant cites no testimony that the jury in fact actually was dispersed during the trial. Our examination of the record shows the following statement by the trial judge:
BY THE COURT:
Let the record show that we are now taking a recess until six o’clock, that the matter of the jury’s voting in the municipal elections in Brandon and Pearl that are being held today and perhaps other municipalities has been broached and that the defendants have agreed that they have no objection to the sequestered jury being allowed to accompany a bailiff to the voting place to be allowed to cast their vote.
Nowhere in the record have we found any testimony, or affidavit, or fact-finding that the jury actually dispersed. At most is a statement from the judge in the case that he and the lawyers had agreed that the “sequestered jury” might go to the voting places accompanied by a bailiff. The judge’s statement indicates an agreement that the jurors could go vote, but that they in fact dispersed or voted is not established in the record. No improper association of a juror with another person or misconduct is charged or suggested by the defendant. Jury dispersal was merely raised by the bare allegation in the defendant’s unsworn motion for a new trial. We are unable to find (and none has been cited to us) evidence in the record supporting the motion. Absent any proof of actual dispersal and absent any proof to support the motion, reversible error has not been established in this regard. Upon the state of the record, the cited cases of Cox v. State, 365 So.2d 627 (Miss.1978), and Weaver v. State, 272 So.2d 636 (Miss.1973), do not apply.
Secondly, defendant Polk argues that his requested jury instruction D-7 on self-defense was erroneously denied by the trial court. We note that the defendant was granted instruction D-2, which liberally directed the jurors to
[P]ut themselves in the Defendant’s place, and then judge whether the danger was apparent, or should have been con *932 sidered apparent by a person of ordinary caution and prudence in like condition, and that the danger need not have been real, present or urgent at the very moment of the killing, but only apparently so, ...
Also instruction D-4 was given, authorizing the jurors to determine whether the killing was done under circumstances wrongfully provoked by some “overt act, conduct, or behavior of the deceased...” This instruction told the jury that “a motion, a gesture, conduct, or demonstration, or anything else” might evidence to the defendant the design of the deceased to take the life of the defendant. Instruction S-5 granted at the request of the state was also a self-defense instruction given to the jury. When all of these instructions are considered together, we are unable to say that the jurors were not adequately instructed on self-defense ¿£nd, accordingly, this argument lacks merit.
The third argument made by defendant is his contention that the lower court should have granted him a mistrial “due to improper conduct of the district attorney.” We have looked at the instances of alleged prosecutorial misconduct and do not find them to be serious enough to warrant reversal. In the most serious instances, the trial judge sustained defense objections and properly admonished the jurors. Evidence of the defendant’s guilt is so overwhelming that a fair-minded jury could hardly have reached a verdict against the defendant less severe than that which was reached. He was being tried for the death penalty but the jurors found him guilty of murder less than capital murder. It is not likely that he was actually prejudiced by the improper actions of the district attorney, and the argument on this point is not persuasive.
Last argument is that the lower court erred in not instructing the jury to restrict its verdict and find the defendant “guilty of manslaughter or not guilty.” We find no merit to this argument because the record presents a case of overwhelming proof of the defendant’s guilt. When Constable McCrory was shot, he was dressed in his uniform and killed by a shotgun blast admittedly fired by the defendant from inside the defendant’s residence. The record shows testimony of the defendant’s son who stated that his father stated he shot the constable and intended to do so. At the time he was shot, Constable McCrory was attempting to serve an arrest warrant and no reason was shown that would justify the defendant’s shooting him. Upon the facts presented, it was for the jury to resolve the issue of whether the defendant was guilty of murder, manslaughter, or no crime. The jurors found him guilty of murder upon testimony which adequately supported the verdict, and reversible error has not been established.
AFFIRMED.
PATTERSON, C. J., SUGG and WALKER, P. JJ., and ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.
DAN M. LEE, J., takes no part.