441 So.2d 1363 (1983)
Terry Lynn WITHERSPOON
v.
STATE of Mississippi.
No. 54620.
Supreme Court of Mississippi.
December 14, 1983.
Rehearing Denied January 11, 1984.
Daniel P. Self, Jr., Franklin M. Coleman, Self & Jordan, Meridian, for appellant.
Bill Allain, Atty. Gen. by Walter L. Turner, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
BROOM, Presiding Justice, for the Court:
Manslaughter is the offense for which the defendant, Terry Lynn Witherspoon, was convicted in the Circuit Court of Lauderdale County, the Honorable Lester Williamson presiding. Trial was upon a murder indictment and after the lesser offense (manslaughter) conviction, the court sentenced the defendant to fourteen (14) years in the custody of the Mississippi Department of Corrections and suspended the last six (6) years, with the last five (5) of those years on supervised probation[1]. On her appeal she assigned a number of errors, but we deem it appropriate to discuss only the matter of jury dispersal, and find no merit to other arguments. We affirm.
*1364 Facts of the homicide are largely without dispute but show that on Thanksgiving day, 1981, the defendant shot and killed her husband, McKinley Witherspoon. She testified that he was drunk and that she shot him four times after he pulled her out of her daughter's bed.
Chief issue is whether the trial judge abused his discretion in refusing to sequester the jury, and in his refusal to order a new trial on account of a communication coming to a juror during a recess of the trial. Less than 48 hours in advance of trial, the defense moved the court to prohibit jury dispersal, although Rule 5.07 of the Uniform Circuit Court Rules provides that such motions should be filed 48 hours in advance of the trial. Barnes v. State, 374 So.2d 1308 (Miss. 1979).
The issue under consideration here relates to an occurrence involving a communication to a juror outside the court's presence. During a recess, juror Edna Grant was walking between the bank where she was employed and the courthouse at about 9:15 A.M., when a black man approached her. What then occurred is set forth in the following excerpt of testimony given by her on motion for new trial:
"You're one of those jurors, aint you?" And I didn't say anything. I just kept walking, and then he said, "Ya'll are going to find her guilty, ain't you?" I told him I didn't know, we hadn't heard all the evidence to say whether she was innocent or guilty, and I kept walking and he went on around me and the only thing he said was, "She's guilty. She shot him in cold blood," or something like that. And then I came on over here to the Court House.
When Mrs. Grant went to the jury room, she told the jurors what had happened as indicated above. There was some discussion as to whether or not she should report the matter to the judge, but she thought that it was a negligible remark not serious enough to require telling the judge. Another member of the jury asked her if the incident would affect her decision on the case, and she answered that it would not. Next morning, a juror asked her again whether or not the incident would affect her verdict, and she answered in the negative.
Mrs. Grant did say that the incident worried her because she lived alone with two children and did not know whether to expect anything further from the black man. However, she positively testified that she did not consider the incident as being serious or warranted bringing it to the court's attention.
Upon the posture presented and the facts before us, we are unwilling to hold that the jury process was in any sense so contaminated or tainted as requiring reversal. The trial judge considered the matter and refused to order a mistrial and we cannot say that his ruling warrants reversal. To hold that reversal upon these facts is required would be tantamount to saying that almost any trial could be aborted by having someone suddenly appear wherever a juror might be and blurt out that the defendant was guilty and ought to be convicted.
Trial judges are vested with much discretion in the conduct of judicial proceedings. Turner v. State, 220 So.2d 295, 297 (Miss. 1969), cert. den. 396 U.S. 834, 90 S.Ct. 92, 24 L.Ed.2d 85. We will look with favor upon the action of a trial judge in deciding whether a mistrial or new trial should be ordered on account of an unauthorized communication to a juror. His rulings on such matters will generally not be ground for reversal except in cases where there is an abuse of such discretion below. Pepper v. State, 200 Miss. 891, 898, 27 So.2d 842, 845 (1946). No such abuse occurred in this trial.[2] Accordingly, affirmance is required.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
DAN M. LEE, J., dissenting.
NOTES
[1] The sentence is somewhat novel in stating "with the last six (6) years suspended and the last five (5) years suspended on supervised probation". It is in apparent accord with Mississippi Code Annotated § 47-7-37 which limits probation to five (5) years.
[2] We point out the rule in this state that jurors will not be allowed to impeach the verdict rendered by them. Ratliff v. Nail, 231 So.2d 798 (Miss. 1970).